IIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VILLAGE OF ROXANA, ILLINOIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 12-577-GPM** |
| | ) | |
| **SHELL OIL COMPANY and EQUILON** | ) | |
| **ENTERPRISES, LLC, d/b/a Shell Oil** | ) | |
| **Products US,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Roxana is a small village in Madison County, Illinois that was formed around a petroleum refinery operated by Shell.   Roxana was for many years a company town so that the city park is named "Shell Park" and the high school athletic teams are known as the Roxana "Shells."   The Illinois Environmental Protection Agency ("the IEPA") has forced Shell to take measures to remediate the pollution coming from its refinery that threaten surrounding soil and groundwater. This action is an effort by Roxana to enforce its own municipal ordinance. Resolution of Shell's motions turn on the interplay of the IEPA's earlier measures and Roxana's ordinance, which targets every imaginable nuisance.

Roxana started this action by filing 230 separate cases in state court.   The complaint in each case described a separate property located within Roxana that was alleged to be contaminated by pollutants from the Shell refinery.   Shell removed all 230 cases based on diversity of citizenship once they were consolidated.   Roxana's claims are based on an ordinance adopted in

1932 which makes it unlawful "to place, deposit, throw, leave or permit to remain, or to cause or permit to flow, any liquid, slops, animal or vegetable matter, filth, dirt or rubbish, or substance of any kind likely to become rotten, foul, nauseous, putrid or offensive" on any property or water in Roxana (Docs. 43, p. 5; 38-16, p. 1).   Each ordinance violation action seeks a fine of up to $750 per day for each day the nuisance existed, beginning on March 21, 2007 (Doc. 43, p. 1).

Presently before the Court is Defendants' motion to dismiss and for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 (Doc. 38).   The Court has carefully studied the parties' papers and the arguments presented in open court.   For the reasons that follow, the motion is **DENIED.**

<u>RULE 12(b)(6) and RULE 56 STANDARDS</u>

Under Federal notice pleading, a complaint need only "include a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need only include "factual allegations [that are] enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter...to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Writing for the dissent in the Seventh Circuit's *Vance v. Rumsfeld en banc* opinion, Judge Rovner succinctly stated:

> To survive a motion to dismiss, a complaint need not do more than enunciate a plausible claim for relief.  The plausibility standard is not akin to a 'probability requirement.'  It does not imply that the district court should decide whether the claim is true, which version of the facts to believe, or whether the allegations are persuasive.  Provided the complaint invokes a recognized legal theory…, and contains plausible allegations on the material issues, it cannot be dismissed under Rule 12.

701 F.3d 193, 226 (7th Cir. 2012) (internal citations and quotations omitted).   The plaintiff,

however, must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678. And "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* It is "not enough to give a threadbare recitation of the elements of a claim without factual support." *Bissessur v. Indiana Univ. Bd. of Trs.,* 581 F.3d 599, 603 (7th Cir. 2009).

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has likewise been succinctly stated by the Seventh Circuit as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

## APPLICABILITY OF ROXANA ORDINANCE 8.16.010

Shell argues this ordinance does not cover petroleum byproducts that are "valuable commodities that its owner takes precautions to safeguard." (Doc. 38, p. 14). This is a question of law that the parties agree is to be decided by Illinois rules of construction, as if the ordinance were a statute. *Pro's Sports Bar & Grill, Inc., v. City of Country Club Hills,* 589 F.3d 865, 871 (7th Cir. 2009); *Weinberg v. City of Chicago,* 310 F.3d 1029, 1035 (7th Cir. 2002); (Docs. 49, 50); *see also Napleton v. Village of Hinsdale,* 891 N.E.2d 839, 846 (Ill. 2008) ("In construing the validity of a

municipal ordinance, the same rules are applied as those which govern the construction of statutes."). In Illinois, the plain and ordinary meaning of words in an ordinance is the best indication of the statutory objective. *Palm v. 2800 Lack Shore Drive Condominium Association,* 370 Ill.Dec. 299, 309 (Ill. 2013).

Benzene[1] and other byproducts of refining are malodorous and toxic. That they are 'produced' and commercially valuable adds nothing to the analysis. Suppose a trucker spilled a tank car full of anhydrous ammonia or gasoline into the sewer system. Or better yet, suppose a box car full of asbestos overturns and the asbestos is released. Each of these commodities were valuable when produced but no doubt "noxious" and so within Roxana's ordinance. The ordinance applies to the facts as alleged.

## ILLINOIS ENVIRONMENTAL PROTECTION ACT PREEMPTION

Roxana is a non-home rule municipality and as such may only exercise those powers enumerated in the Illinois Constitution or by implication conferred by a state statute. If a non-home rule municipality enacts an ordinance conflicts "with the spirit and purpose of a state statute," that ordinance is preempted by the statute. *Hawthorne v. Village of Olympia Fields,* 790 N.E.2d 832, 842 (Ill. 2003). So, if Roxana's ordinance conflicts with an IEPA permit or consent order entered pursuant to the Act, it must give way as preempted.

The narrow question here is wehther the Roxana ordinance conflicts with a 1989 IEPA permit that was renewed in 2010 or with a 1998 consent order. There is no conflict and the closest case on the subject makes this clear. In *Village of DePue, Illinois v. Exxon Mobil Corp.,* the Seventh Circuit affirmed a Central District of Illinois order on a similar case. 537 F.3d 775 (7th

---

[1] "A natural constituent of crude oil" and a by-product of the petrochemical industry, which "increases the risk of cancer and other illnesses." http://en.wikipedia.org/wiki/Benzene#Production

Cir. 2008).   A suit by the Illinois Attorney General against Exxon resulted in a Consent Order

requiring Exxon to perform investigations and remedial actions.  *Id.* at 780.  The Village of

DePue later sued Exxon for violation of a municipal nuisance ordinance.  *Id.* at 781.  DePue's

complaint sought declaratory judgment, daily fines of $750 for the violation, and injunctive relief

"requiring Exxon immediately to clean the site and have it removed."  *Id.* The Seventh Circuit

affirmed that application of the nuisance ordinance conflicted with the Consent Order.  *Id.* at 789.

The Court of Appeals reasoned:

> If the Village were permitted to apply its nuisance ordinance to force Exxon to
> complete *immediately* the cleanup of the site, on penalty of $750 per day for
> noncompliance, then it could prevent compliance with the measured cleanup
> process adopted by Illinois through the Consent Order…Here, Exxon is *required* to
> perform its work in compliance with the Illinois Act, as directed by the Consent
> Order; the Village simply is seeking to force it to act in a manner inconsistent with
> those state requirements…The Village's application of its nuisance ordinance in
> this case is overreaching because it attempts to regulate an environmental hazard
> that is not local in nature and that already is subject to a cleanup under the
> authorization and direction of the state.

*Id.* at 788-89 (emphasis in original).   There was a "direct conflict" between the IEPA's Consent

Order and DePue's application of its ordinance.   537 F.3d at 789.   No such direct conflict has

been demonstrated here.   The corrective action plan of Shell's Consent Order required Shell to

recover pollutants from the land of the "Rand Avenue" section of a 1989 oil spill (Doc. 38-15, p.

19-20).   Shell was to submit reports on that clean-up to the IEPA.   For details of the clean-up, the

Consent Order directed Shell to the 1989 IEPA Permit (Doc. 38-15, p. 12).   It is not clear that the

hydrocarbon recovery in that area relates at all to the properties at issue in Roxana's suit.   Roxana

claims ordinance violations occurred on March 21, 2007 and thereafter.   The 2010 URS

Report—which Roxana says gave them notice of possible ordinance violations in the

Village--identifies multiple petroleum spills (Doc. 44-1, ¶ 92, 96)--spills that presumably

post-date the spill which precipitated the Consent Order.   By its terms, the Consent Order covers only claims arising from Shell's activities at the refinery "between December 29, 1987 and September 30, 1990." (Doc. 38-15, p. 3).   Roxana has shown that its ordinance violation suit arises, at least in part, from chemical emissions *after* those dates.   The Consent Order states that it does *not* cover liability for future violations of local regulations (Doc. 38-15, p. 3).   The Court will therefore not find Roxana's future claim for violation of a local regulation preempted.

Neither do the IEPA's permits for the refinery preclude Roxana's enforcement of its municipal ordinance.   The 1989 permit specifically references containment of hazardous materials from the 'disposal basin' (Doc. 38-2, p. 8).   Follow-up correspondence between Shell and the IEPA focused on work plans related to a 1986 benzene spill (Doc. 38-4, p. 1).   The action plans required by both the 1989 permit and the 2010 permit are plans to address the 1986 benzene release (Doc. 38-7, p. 24).   Throughout the back and forth between the IEPA and Shell, the focus is on investigation and report of the 1986 spill and the landfilled disposal basin area.   Taking all facts at this stage in a light most favorable to Plaintiff, Shell cannot show conflict between IEPA regulation and application of ordinance 8.16.010.

Here, Roxana admits the daily fine is a "penalty," not compensation (Doc. 2-1, p. 1).   The sticking point for Defendants here is their failure to say how rectifying these ordinance violations in any way prevents them from compliance with either the Consent Order or the IPEA permit requirements.   And that was the line drawn by the Seventh Circuit.   The Court of Appeals found that if the Village of DePue applied its nuisance ordinance, it would force those defendants to "*immediately*" cleanup the site thereby preventing compliance with "the measured cleanup process" of that Consent Order.   537 F.3d at 788.   There is no evidence of such a measured

cleanup process in this case.   As pleaded, the fine for the alleged ordinance violations is a punishment for allowing hazardous substances onto Roxana property.   Neither by its terms nor by any evidence shown by Defendants does application of this ordinance force Shell to act contrary to IEPA regulation.   Defendants' motion for dismissal/summary judgment on the basis of state preemption is denied

### STATUTE OF LIMITATIONS and POST-MARCH 21, 2007 VIOLATIONS

Under Illinois law, actions for damages for a statutory penalty must commence within two years after the cause of action accrued.   735 ILCS 5/13-202 (West 2008).   An action for a municipal ordinance violation is a statutory penalty action.   *Landis v. Mar Realty, L.L.C.,* 919 N.E.D2d 300, 308 (Ill. 2009).   Plaintiff filed this action on March 20, 2012 (Doc. 2-2), and Shell argues Plaintiff is outside the statute of limitations.

Shell points to Roxana ordinances going back to April, 1989, which grant Shell right of entry in the Village to investigate and monitor groundwater (Doc. 38, p. 11).   This, Shell argues, is evidence that Roxana knew of the environmental conditions resultant from refinery activity over twenty years before filing its ordinance violation suit.   Shell also cites its own correspondence to the Village, going back to 1990, apprising the Village of Shell's investigations and removal of groundwater contaminants.   Shell points specifically to a February 20, 2006 letter from Shell Staff Project Manager Kevin Dyer to Village of Roxana Director of Public Works Marty Reynolds (Doc. 38-20).   That letter states that benzene spilled from an underground pipeline on January 30, 1986, and subsequent investigation by Shell indicated that east-flowing groundwater may have impacted the groundwater of an industrial/commercial/residential area in the Village (*Id.*).   The letter informed Roxana's Public Works Director that a May 2008 subsurface investigation was

planned to investigate the extent of benzene in the groundwater, investigate expected movement of the benzene contamination, and develop remedial options as needed (*Id.*).

The 'notice' to Roxana from Shell stresses the investigational nature of Shell's activity.   It is not clear that Roxana ought to have known from those correspondence that Shell was in violation of Roxana's nuisance ordinance—Roxana might reasonably have assumed Shell was merely investigating the possibility that contaminants were flowing on Roxana property/water. The statute of limitations begins to run when the plaintiff becomes "possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.,* 108 F.3d 806, 809 (7th Cir. 1997).   Here, Shell would have to prove that Roxana knew or should have known both that:   (1) its property was injured; and (2) the injury resulted from Shell's conduct.   *Id.*

Roxana argues that Shell cannot show this, and points to the timing of reports released by URS Corporation.   URS Corporation, an engineering firm hired by Defendants to carry out the investigation of groundwater and soil contaminants from the refinery, issued a report on February 18, 2010 regarding the existence of contaminants in Roxana (Doc. 44-1, ¶ 79, 103).   That report indicated two distinct groundwater contaminant plumes, including a heretofore unknown plume extending into a residential portion of the Village (*Id.* at ¶ 81, 84).   Per that report however, no oil had been detected in the Village outside of the refinery perimeter (*Id.* at ¶ 87).[2]   A November 30, 2010 URS follow-up report detected a third benzene plume and determined that the contamination resulted from both the 1986 benzene pipeline spill to Roxana's southwest and from other spills of

---

[2] The report stated that no "LNAPL" had been detected outside the refinery perimeter, LNAPL being 'light non-aqueous phase liquid', or insolubles less dense than water—of which oil is one (Doc. 44-1, ¶ 83).

petroleum products from the refinery to Roxana's east (*Id.* at ¶ 92, 96).   Roxana claims that it was not until an April 14, 2011 URS report that oil had been detected outside the refinery perimeter (*Id.* at ¶ 99).

There are genuine issues of material fact precluding summary judgment on the basis of a statute of limitations defense.   There is evidence Roxana knew Shell was investigating possible contamination.   But this does not speak to when Roxana reasonably should have discovered the extent of the contamination; or exactly where the contamination extended; or what substances were present.   Further, the ordinance violations here complain of activity occurring March 21, 2007 and thereafter (Doc. 2-2).   The 'notice' Shell points to (the ordinances allowing Shell to investigate the area and the letters from Shell regarding their investigations) predate this March 21, 2007 'violation date'—so Shell has ostensibly provided no evidence that Roxana should have known of the violations that began in 2007.

The Court addresses Shell's additional statute of limitations arguments briefly as follows, as nothing in those arguments persuades the Court that the statute of limitations defense is meritorious.

Shell argued that this could not be a 'continuing violation' as Shell has not owned the refinery since June 1, 2000 (Doc. 38, p. 11).   A continuing violation may circumvent the statute of limitations.   In a trespass case, Illinois's First District Appellate Court recently outlined, "[a] continuing violation extends to situations where new encroachments occur on a continuing basis, such as the repeated flooding or erosion of another's land…It does not encompass situations where there is a single encroachment with effects that endure over an extended period of time."   *Rachel v. Sershen,* No. 1-10-0774, 2011 WL 10068996 at *5 (Ill. App. March 25, 2011).   Here again,

factual questions remain over whether the ordinance violations result from one definitive and historical spill or ongoing contaminant releases. The November 30, 2010 URS report seems to indicate that contaminants flowing into Roxana from the east are from continuing spills (Doc. 44-1 ¶ 92, 96). The ordinance violation itself charges that Shell permitted offensive substances to remain and flow onto Roxana property. If the benzene plume *continues* to flow, then this is a continuing violation. Roxana in fact chooses to define its claim, instead of one for continuing violations, as a claim for "a series of separate violations occurring each day." (Doc. 43, p. 10). Because so many genuine issues of material fact are outstanding, the distinction is not dispositive.

Shell's related argument—Shell could not be responsible for these ordinance violations, as the violations complain of activity on and after March 21, 2007, and Shell has not controlled the refinery since June 1, 2000—is denied (Doc. 38, p. 13). Even if Shell did cede all oversight of the refinery in 2000, Roxana's point in response is well taken: Shell could be in violation of the ordinance if it permitted the offensive substances to flow *or remain* on the specified property (Doc. 43, p. 22). As it is factually unclear exactly when and from where the "offensive substances" emanated, dismissal/summary judgment is inappropriate on this basis.

Roxana argued that it is exempt altogether from the statute of limitations in this case, as this is a claim involving public rights (Doc. 43, p. 7-8). Under Illinois common law, "the statute of limitations may not be asserted against the State or its county or municipal subdivisions as plaintiffs in actions involving public rights." *City of Chicago v. Latronica Asphalt and Grading, Inc.,* 805 N.E.2d 281, 286 (Ill.App. 2004) (internal citations and quotations omitted). To determine whether Roxana was asserting a public or a private right, the Court should consider: (1) the effect of the interest on the public; (2) the obligation of Roxana to act on behalf of the

public; and (3) the extent to which public funds must be expended.   *Id.* By the language of the ordinance violation, the interest targeted here is the interest to punish the deposit of offensive substances on property in Roxana.   That is certainly a public interest.   *See id.* at 287 ("A common law public nuisance is actionable even if the claim is premised on a nuisance present on private property.").   Before the Court (*see* Doc. 47), Shell argued that Roxana was not obligated to act on that interest, as the ordinance does not specify that the city "shall" prosecute such violations.   That argument is not persuasive—if the municipality is not obligated to act on behalf of the public when a municipal ordinance is being violated, then no one is and the ordinance itself is useless—the Court will not operate under that assumption.   As for 'cost' on the other hand, Roxana has not shown that public funds must be tapped because the alleged ordinance violations.   The balance of factors, however—particularly considering the public health and safety concerns emanating from hazardous material flow, weighs in favor of Roxana.   So, while the Court bases its statute of limitations determination on the abundance of outstanding material facts, it does note that Roxana's sovereign immunity argument appears meritorious.   Defendants' motion to dismiss/for summary judgment on the basis of the statute of limitations is denied**.**

<u>CONCLUSION</u>

Defendants' motion to dismiss and for summary judgment (Doc. 37) is **DENIED.**

**IT IS SO ORDERED.**

**DATED**:   August 26, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge