IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VILLAGE OF ROXANA, ILLINOIS,<br><br>       Plaintiff,<br><br>  vs.<br><br>SHELL OIL COMPANY and EQUILON ENTERPRISES, LLC, d/b/a Shell Oil Products US,<br><br>       Defendants. | Case No. 12-cv-577-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendants Shell Oil Company's and Equilon Enterprises, LLC's (collectively "Shell") motion for certification of order for interlocutory appeal (Doc. 62). Plaintiff Village of Roxana, Illinois ("Roxana") filed a response (Doc. 64) to which Shell replied (Doc. 65).

Shell seeks an order from this Court certifying Judge Patrick G. Murphy's order (Doc. 60) dated August 26, 2013, in which Judge Murphy denied Shell's motion to dismiss and for summary judgment, to the Court of Appeals for the Seventh Circuit. Specifically, Shell asks the Court to certify the following issues for interlocutory appeal: (1) Whether the Village of Roxana's Municipal Ordinance § 8.16.010 violation claims are preempted under Illinois law?; and (2) Whether the plain meaning of section 8.16.010, as a matter of law, encompasses Roxana's Municipal Ordinance violation claims? For the following reasons, the Court grants in part and denies in part Shell's motion.

1. Background

Roxana is a small industrial village in southern Illinois that was built up around Shell's petroleum refinery. The refinery defined the village for many years as evidenced by the city park's name of "Shell Park" and the high school's "Shells" mascot. While the refinery has undoubtedly had a positive financial impact on the village, petroleum byproducts, including benzene,[1] leaked into the soil and groundwater have caused great concern to both the Illinois Environmental Protection Agency ("IEPA") and Roxana's residents.

In response to the petroleum byproduct pollution, Roxana filed 230 separate complaints, each complaint representing a different Roxana property allegedly contaminated by Shell's pollutants, in the Circuit Court for the Third Judicial District, Madison County, Illinois, in an effort to enforce Roxana Municipal Code § 8.16.010 against Shell. Section 8.16.010 provides as follows:

> 8.16.010 Leaving garbage, dirt or rubbish in public way or watercourse. It is unlawful for any person to place, deposit, throw, leave or permit to remain, or to cause or permit to flow, any liquid, slops, animal or vegetable matter, filth, dirt or rubbish, or substance of any kind likely to become rotten, foul, nauseous, putrid or offensive, in or upon any premises occupied or controlled by him, or into or upon any adjacent premises, or upon the premises or any other person, or into or upon any street, alley or public ground, or into any stream of water or pond.

Roxana, Ill. Mun. Code § 8.16.010 (1932). Based on this ordinance, each complaint states as follows:

> On or about March 21, 2007, and continuing every day thereafter through the present date and beyond, the Defendants, Shell Oil Company and Equilon Enterprises LLC d/b/a Shell Oil Products, US, a Corporation, or either one of the Defendants acting on behalf of all the others, did place, deposit, leave or permit to remain, or cause or permit to flow, an offensive substance, namely petroleum byproducts including but not limited to benzene, into or upon the premises of any other person, or into or upon any street, alley or public ground, namely [each lot

---

[1] "Some people who drink water containing benzene well in excess of the maximum contaminant level (MCL) for many years could experience anemia or a decrease in blood platelets, and may have an increased risk of getting cancer." http://water.epa.gov/drink/contaminants/basicinformation/benzene.cfm (last visited Feb. 28, 2014).

>and block number for 230 claims] in the Village of Roxana.  The Defendants are jointly and severally responsible for the aforesaid.

Doc. 2-1, p. 1.  Each ordinance violation claim seeks a fine of up to $750 per day for each day the nuisance existed, beginning March 21, 2007.

Shell removed the 230 cases on the basis of diversity of citizenship.  Thereafter, Shell filed a motion to dismiss and for summary judgment arguing that the claims were preempted by Illinois law and that the alleged facts were not encompassed within the plain meaning of section 8.16.010.  After considering the plain language of the statute, Judge Murphy concluded that the ordinance encompassed Shell's alleged benzene contamination of Roxana properties.

Next, Judge Murphy considered whether the Roxana ordinance conflicted with a 1989 IEPA permit that was renewed in 2010 or with a 1998 consent order.  He concluded that there was no conflict between the consent order and the ordinance.  Specifically, the consent order related to land in the "Rand Avenue" section of a 1989 oil spill.  Judge Murphy noted it was not clear that the properties concerned in the ordinance violations related to the "Rand Avenue" area.  Further, the consent order concerned contaminations from a different time period than the alleged ordinance violations.  Alos, the alleged ordinance violations did not conflict with the IEPA permits because the IEPA permits were limited to the 1986 spill and the disposal basin area.  Finally, Judge Murphy indicated that "the sticking point for [Shell] here is their failure to say how rectifying these ordinance violations in any way prevents them from compliance with either the Consent Order or the IEPA permit requirements." Doc. 60, p. 6.  The Court will turn to consider whether either of these issues presents a question appropriate for interlocutory appeal.

2. Analysis

The court of appeals, in its discretion, may hear an interlocutory appeal after certification from the district court that the appeal presents "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Accordingly, "[t]here are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). The party seeking an interlocutory appeal bears the burden of demonstrating "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

      a. IEPA and Consent Decree Preemption

The first question Shell asks the Court to certify for interlocutory appeal is whether Illinois law preempts the ordinance violation claims. As an initial matter, the Court must determine whether the preemption issue presents a question of law within the meaning of section 1292(b). Shell argues that it satisfies this requirement because "[w]hether a particular claim is preempted by state or federal law is a question of law." Doc. 63, p. 4. In support of its position, Shell cites to *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*, 657 F.3d 496, 504 (7th Cir. 2011) which finds that "[a] district court's preemption ruling is a question of law that [the appellate court] reviews *de novo*." Roxana, however, argues that the preemption question in this case is not a "question of law" within the meaning of section 1292(b) because it involves factual inquiry. The Court agrees with Roxana.

A "question of law" within the meaning of section 1292(b) "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676. In considering the interlocutory appeal of a denial of summary judgment, the court explained that such a denial was technically a question of law; however, it was not a "question of law" within section 1292(b). *Id*. Similarly, while contract interpretation is technically a question of law, it is not a "question of law" within the meaning of section 1292(b). *Id*. In considering "question of law" within the meaning of section 1292(b), the court explained that

> [t]he idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case. . . . But to decide whether summary judgment was properly granted requires hunting through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of material fact lurking there; and to decide a question of contract interpretation may require immersion in what may be a long, detailed, and obscure contract . . . .

*Id*. at 676-77.

Here, to determine whether the IEPA permit or consent decree conflicted with Roxana's ordinance violation claims, the court of appeals would have to make a factual inquiry including examining whether the properties at issue overlapped with the properties involved in the IEPA permit and consent order. That the preemption question involves a factual inquiry inconsistent with the purposes of section 1292(b) is evidenced by Judge Murphy's order. Judge Murphy found the "sticking point" for Shell was that they failed to show compliance with the alleged ordinance violations would prevent compliance with the IEPA permit or consent order. This question would obviously require inquiry into the details of the IEPA permit and consent order. Thereafter, the court would have to inquire into the reach of the alleged ordinance violations,

comparing the tracts of lands and the dates of the alleged violations. Such an inquiry does not present a pure question of law that can be decided quickly and cleanly without studying the record. For those reasons, the Court concludes that the question of whether Illinois state law preempts Roxana's alleged ordinance violation is not a question of law within the meaning of section 1292(b). Accordingly, the Court denies Shell's motion for certification of order for interlocutory appeal in that respect.

      b. Statutory Construction of Section 8.16.010

The second question Shell asks the Court to certify for interlocutory appeal is whether the plain meaning of section 8.16.010 encompasses Roxana's ordinance violation claims. This is a question of law because such a determination requires the interpretation of an ordinance rather than fact finding. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010). Further, this question is undoubtedly controlling in this case. If the ordinance does not encompass Shell's alleged actions, then the case is over. *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."). For that reason, the question would speed up the litigation if the appellate court agreed with Shell.

The final issue for the Court's determination is whether the issue is contestable. This particular Roxana ordinance has not been the subject of judicial interpretation. For this reason, Shell argues that the question is contestable. *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002) (indicating that statutes of first impression are "certainly contestable"). Roxana, however, argues that there is not substantial ground for difference opinion on this matter and this issue has been considered in the

context of other municipalities' ordinances.  The Court agrees with Roxana and concludes that the fact that this specific Roxana ordinance has not been the subject of appellate judicial interpretation does not mean that this issue is necessarily contestable.  Accordingly, the Court will consider the rules of statutory construction to determine whether it is contestable that petroleum byproducts are within the scope of Roxana's ordinance.

Under Illinois law, courts use traditional rules of statutory construction to interpret municipal ordinances.  *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 871 (7th Cir. 2009).  The Illinois Supreme Court has explained that "[t]he primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004) (quoting *People v. Donoho*, 788 N.E.2d 707, 715 (Ill. 2003)).  "The best evidence of that intent is the language of the statute." *Adams*, 359 F.3d at 862.  Accordingly, the Illinois Supreme Court "will 'interpret the statute according to the plain and ordinary meaning of the language." *Id*. (quoting *Donoho*, 788 N.E.2d at 715).  Where there is more than one reasonable interpretation, the Court may use aids, such as legislative history, to guide its interpretation.  *Donoho*, 788 N.E.2d at 716.

The Court must first look to the language of Roxana's ordinance to ascertain legislative intent.  From an initial look at the language of the statute, petroleum byproducts could fall within "substance of any kind."  Shell contends, however, that benzene is not within the scope of section 8.16.010 because the substance does not meet the ordinance's requirement that the substance is "likely to become rotten, foul, nauseous, putrid or offensive."  Specifically, Shell argues that "the commonly accepted meanings of terms used in the ordinance (*e.g.*, substances likely to become rotten, foul, nauseous, putrid or offensive such as liquids, slops or animal and vegetable matter) simply do not include valuable commodities that its owner takes precautions to

7

safeguard." Doc. 38, p. 14.  Shell reasons that "these terms are intended to apply to intentionally discarded, useless material such as animal and vegetable waste." *Id.*

Courts to have considered whether leaked petroleum byproducts are valuable within various statutory meanings have found that, while it is valuable in its original form, petroleum loses its value once leaked into the ground. *Waldschmidt v. Amoco Oil Co.*, 924 F. Supp. 88, 90 (C.D. Ill. 1996) (In considering whether petroleum byproducts fell within the definition of "solid waste" under the Resource Conservation and Recovery Act, the court observed that "[o]nce 'petroleum leak[s] into soil or groundwater [it] ceases to be useful.'"); *see also Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.*, 877 F. Supp. 476, 481-82 (D. Minn. 1995); *Dominic's Finer Foods, Inc. v. Amoco Oil Co.*, 1993 WL 524808, at *2 (N.D. Ill. Dec. 15, 1993), *Zands v. Nelson*, 779 F. Supp. 1254, 1261 (S.D. Cal. 1991).  Shell has failed to cite to a case that supports its contention that benzene, once released into the ground, is a valuable product.  Like other courts to have considered the issue, this Court finds it uncontestable that benzene leaked into the ground is not a valuable commodity and does not find Shell's argument persuasive.

The Court must next consider whether it is contestable that benzene is "likely to become rotten, foul, nauseous, putrid or offensive."  The standard dictionary definitions of these terms provide a starting point.  "Rotten" is defined as "having rotted or decayed and no longer able to be used, eaten, etc.; very bad or unpleasant; not well or healthy."  Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/rotten (last visited Feb. 28, 2014).  "Foul" is defined as "very unpleasant to taste or smell; morally bad; very evil; very bad or unpleasant."  Merriam-Webster's Online Dictionary, http://www.merriamwebster.com/dictionary/foul (last visited Feb. 28, 2014).  Nauseous is defined as "feeling like you are about to vomit; causing you to feel like you are going to vomit; causing disgust."  Merriam-Webster's

8

Online Dictionary, http://www.merriam-webster.com/dictionary/nauseous (last visited Feb. 28, 2014). Putrid is defined as "decayed with usually a very bad or disgusting smell; very ugly, bad, or unpleasant." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/putrid (last visited Feb. 28, 2014). Offensive is defined as "very unpleasant." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/offensive (last visited Feb. 28, 2014).

Based on these definitions, a reasonable interpretation of the ordinance could be that section 8.16.010 was only intended to encompass the disposal of items that caused bad odors. Judge Murphy's order concluded that "[b]enzene and other byproducts of refining are malodorous and toxic" and thus included within the ordinance. However, the Center for Disease Control describes benzene as having a "sweet odor." Center for Disease Control and Prevention, http://www.bt.cdc.gov/agent/benzene/basics/facts.asp (last visited Feb. 28, 2014). The Scientific American explained that "[s]ome would call it sweet, some pungent." The Scientific American, http://www.scientificamerican.com/article/what-is-benzene/ (last visited Feb. 28, 2014). The Court is not convinced that benzene emits a bad odor as was intended to be encompassed in Roxana's ordinance. However, whether the smell is sweet or pungent, there is no contention here that Roxana sought to enforce this ordinance based on benzene's smell. Rather, it appears that Roxana sought to enforce the ordinance based on the harmful and "offensive" side effects caused by the pollution of benzene in groundwater.[2]

---

[2] In its response to Shell's motion to dismiss or for summary judgment, Roxana indicates that Shell's actions fall within the reach of the ordinance because "the chemicals now polluting the groundwater and soil in Roxana are substances that have been placed or allowed to remain there; they are also 'foul, nauseous . . . or offensive' and squarely regulated by § 8.16.010." Doc. 43, p. 11.

Based on the foregoing reasoning, the Court finds it contestable that section 8.16.010 encompasses the leaking of petroleum byproducts, including benzene, into the ground.  Because Shell has established that this issue is a question of law, controlling, contestable, and likely to speed up the litigation, the Court will grant Shell's motion in that respect and certify the following question for interlocutory appeal:  Whether the release of petroleum byproducts are "an offensive substance" within the meaning of Roxana's Municipal Code § 8.16.010?

3.   Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Shell's motion for certification of order for interlocutory appeal (Doc. 62).  Specifically, the Court (1) grants the motion to the extent Shell seeks to certify the question of whether, as a matter of law, section 8.16.010 encompasses the alleged ordinance violations; and (2) denies the motion to the extent Shell seeks to certify the question of whether Shell's alleged ordinance violations are preempted by Illinois law.  The Court **CERTIFIES** Judge Murphy's August 26, 2013 Order (Doc. 60) for interlocutory appeal because the following question meets the 28 U.S.C. § 1292(b) requirements:

> Whether the release of petroleum byproducts are "an offensive substance" within the meaning of Roxana's Municipal Code § 8.16.010?

**IT IS SO ORDERED.**

**DATED:** March 4, 2014

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
